UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MARY JO MACE.

                          PLAINTIFF,

            VS

                                                    CASE NO. 05-CIV.-2786
COUNTY OF SULLIVAN; DANIEL                           (SCR)
BRIGGS, INDIVIDUALLY AND AS
COUNTY MANAGER OF THE COUNTY
OF SULLIVAN; OLGA PARLOW,
INDIVIDUALLY AND AS COUNTY
TREASURER OF THE COUNTY OF
SULLIVAN; PAMELA ROURKE,
INIVIDUALLY AND AS
COMMISSIONER OF PERSONNEL
OF THE COUNTY OF SULLIVAN;
HARVEY SMITH, INDIVIDUALLY
AND AS COMMISSIONER OF GENERAL
SERVICES OF THE COUNTY OF
SULLIVAN; JOHN DOE; AND
JANE DOE

                          DEFENDANT.

-------------------------------------------------------x

                          PLAINTIFF'S MEMORANDUM OF LAW IN
                          OPPOSITION TO DEFENDANTS' MOTION TO
                          DISMISS PURSUANT TO FRCP 12 (b)(6)

                          RESPECTFULLY SUBMITTED.

                          STEPHEN L. OPPENHEIM (SO6643)
                          ATTORNEY FOR PLAINTIFF
                          55 EAST 9TH STREET – 3C
                          NEW YORK, NEW YORK 10003
                          212 673 5887

TABLE OF CONTENTS

SUMMARY OF PLAINTIFF'S ARGUMENTS
IN OPPOSITION TO DEFENDANTS'
MEMORANDUM OF LAW                                                        P 1

FACTS                                                                    P 1

POINT I        DEFENDANTS HAVE NOT SHOWN, BEYOND
               DOUBT, THAT PLAINTIFF HAS NO
               POSSIBILITY OF SUCCEEDING AT TRIAL                        P 2

POINT II       PLAINTIFF HAD A PROTECTED PROPERTY RIGHT
               IN HER JOB                                                P 2

        A      Only the Commissioners Had the Power to Appoint,
               Suspend, or Fire the Plaintiff; to Abolish Her Position;
               and to Exclude Her from the Offices of the Board          P 2

               1      Since 1922, statutes have given the Commissioners
                      the sole power to appoint, fire, and suspend Plaintiff;
                      to abolish her job; and to exclude her from the Board's
                      offices                                            P 2

               2      Under New York case law, the "Appoint/Terminate"
                      rule, dating back to the founding of the Republic,
                      the Commissioners, having the sole power to appoint
                      Plaintiff, also had the sole power to suspend her or
                      to fire her, and the sole power to abolish her
                       position. The Defendants lacked any such power    P 4

                      a      Only the Commissioners Have the
                             Power to  Fire  Plaintiff, Not the Defendants    P 4

                      b      The "Appoint/Terminate" Rule Also Gives
                             the Commissioners the Exclusive Powers to
                             Suspend Plaintiff, to Make Decisions
                             Concerning the Use of Budgeted Funds,
                             and to Abolish Plaintiff's Position; None
                             of the Defendants Had Any Such Power
                             or the Power to Instruct the Commissioners
                             How to Conduct Their Affairs                P 6

i

<u>i</u>  *The Power to Suspend Plaintiff is Vested Solely in the Commissioners* P 6

<u>ii</u>  *The Power to Abolish Plaintiff's Position is Vested Solely in the Commissioners* P 7

B *Plaintiff Had a Constitutionally Protected Property Interest in Her Employment Even Though She Was An At-will Employee of the Board of Elections* P 7

POINT III PLAINTIFF STATES CLAIMS AGAINST ALL OF THE DEFENDANTS FOR DUE PROCESS AND EQUAL PROTECTION VIOLATIONS P 10

A *Plaintiff States Claims for Violation of Her Rights to Due Process* P 10

*Bill of Rights* P 11

*Substantive Due Process* P 12

*Procedural Due Process* P 14

<u>B</u> *Plaintiff States a Claim for Violation of Her Right to the Equal Protection of Laws* P 15

<u>C</u> *Plaintiff States Claims Against the Defendant County* P 16

POINT IV THE DEFENDANTS DO NOT HAVE ABSOLUTE IMMUNITY P 16

<u>A</u> *Defendants Have Not Sustained Their Burden of Establishing Absolute Immunity* P 16

<u>B</u> *"Functionally" Defendants Acted Only Administratively* P 17

            i          *Plaintiff Does Not Complain of*
                     *Any "Legislative" Conduct of the*
                     *Defendants*               P 17

            ii         *Defendants' Personnel Decisions*
                     *Taken Against a Single Individual,*
                     *the Plaintiff, Are Administrative in*
                     *Nature and Not Entitled to Absolute*
                     *Immunity*                P 18

POINT V      THE DEFENDANTS DO NOT HAVE
               QUALIFIED IMMUNITY        P 19

      *A*        *Defendants Have Not Met Their Burden*
               *for a Qualified Immunity Dismissal*     P 19

      *B*        *As a Matter of Law, Defendants Have Not*
               *Established Qualified Immunity*      P 20

            i         Defendants' Conduct Did Not Fall
                   Within the Scope of Their Duties    P 20

            ii         Defendants' Actions Violated Clearly
                   Established Statutes and Rights
                   That a Reasonable Person in Defendants'
                   Situation Would Have Known      P 21

           iii        Defendants Could Not Objectively
                   Reasonably Believe That Their
                   Actions Were Lawful at the Time
                   They Acted Against the Plaintiff    P 23

CONCLUSION                            P 25

SUMMARY OF PLAINTIFF'S ARGUMENTS IN OPPOSITION TO DEFENDANTS'
MEMORANDUM OF LAW

*In response to POINT I of Defendants' Memorandum*:

 Plaintiff was at-will employee, but <u>only</u> of the Board of Elections (hereinafter the
"Board"). She had a property right in her job at the will only of the Commissioners of
Elections (hereinafter the "Commissioners").Defendants' interference with Plaintiff's job
deprived her of all three kinds of due process under the 14th Amendment: denied her
freedoms under the Bill of Rights; denied her substantive due process; and denied her
procedural due process. By expelling <u>only</u> Plaintiff, from the Board's offices, and
continuing to do so, Defendants violated Plaintiff's right, as a class-of-one, to the equal
protection of laws..

*In response to POINT II of Defendants' Memorandum*:

 Defendants do not have absolute immunity because they only acted
administratively, not legislatively. Plaintiff complains only about post-adoption conduct.

*In response to POINT III of Defendants' Memorandum*:

 Defendants are not entitled to qualified immunity because a) they acted solely
outside the scope of their duties; b) they violated Plaintiff's clearly established rights that
a reasonable person in their position would have known; and c) they could not objectively
reasonably believe that their actions were lawful at the time that they acted.

*In response to POINT IV of Defendants' Memorandum*:

 Plaintiff states claims against the County of Sullivan for the illegal actions of its
high-ranking officials, the individual Defendants. The rule makes the County liable for
the illegal actions of its County Manager, County Treasurer, and departmental
Commissioners, whose conduct constitute County <u>policy</u> for which the County is liable.

FACTS

 The facts being limited mostly to the complaint, it does not seem necessary to re-
state them. However, <u>Exhibit L</u> to the extent of the letter to Debra S. Gabriel, is not
properly before the Court and should be disregarded. It is not a document "'upon which
[plaintiff] relied in bringing the suit'", <u>Brennan v. Straub</u>, 2003 WL 554620 (S.D.N.Y.),
p.3, <u>Febres v. City of New York,</u> 2006 WL 2730741 (S.D.N.Y.), p. 4.

1

POINT I:        DEFENDANTS HAVE NOT SHOWN, BEYOND DOUBT, THAT PLAINTIFF HAS NO POSSIBILITY OF SUCCEEDING AT TRIAL

> A dismissal is warranted under Rule 12(b)(6) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hamilton Chapter, etc. v. Hamilton College, 128 F.3d 59, 62-62 (2nd Cir., 1997) (emphasis supplied)

Defendants truncated the Hamilton rule, leaving out the hard part set forth above. They must show "beyond doubt" that Plaintiff has no possibility of success and can offer "no set of facts" entitling her to relief. Id. at 62-62. See also, Gagliardi v. Village of Pawling, 18 F.3d 188, 191 (2nd Cir., 1994); Winters v. Meyer, 442 F. Supp.2d 82, 84 (S.D.N.Y., 2006); Hill v. City of New York, 45 F.3d 653, 657 (2nd Cir., 1995).

POINT II:       PLAINTIFF HAD A PROTECTED PROPERTY RIGHT IN HER JOB

Plaintiff is an at-will employee, but only of the Board. She had a property right to her job as long as the Commissioners continued her in her employment.

A:      *Only the Commissioners Had the Power to Appoint, Suspend, or Fire the Plaintiff; to Abolish Her Position; and to Exclude Her from the Offices of the Board.*

Both by statutory and case law, only the Commissioners had power over her job. Defendants' attempts to suspend or fire her, or to abolish her position were "patently unlawful". Frasier v. Bd of Education, 71 N.Y.2d 763, 768, 530 N.Y.S.2d 79, 82 (1988).

*1:      Since 1922, statutes have given the Commissioners the sole power to appoint, fire, and suspend Plaintiff, to abolish her job, and to exclude her from the Board's offices.*

Election Law Sec. 3-300 provides, in pertinent part:

> Every board of elections shall appoint, and at its pleasure remove, clerks, fix their number, prescribe their duties, fix their titles and rank and establish their salaries within the amounts appropriated therefore by the local legislative body…

Thus, it is the "statutory rule that an election clerk may be removed from the Board's employment only upon the concurrent approval of the two commissioners of election." Gimbrone v. Stevenson, 8 A.D.3d 959, 960-961, 778 N.Y.S.2d 799, 801 (4th Dep't, 2004); County of Chautauqua v. Chautauqua County Employees, etc. 181 A.D.2d

1052, 581 N.Y.S. 967 (4th Dep't, 1992). The Commissioners have the "complete and exclusive" control of their personnel. Id., 8 A.D.3d at 961, 778 N.Y.S.2d at 801; Board of Elections, etc. v. O'Rourke, 210 A.D.2d 402, 620 N.Y.S.2d 107, 108 (2nd Dep't, 1994):

The New York Court of Appeals, 64 years before Defendants acted, held that municipal legislatures and officers lacked power over Board "within the amounts appropriated therefor". Fugazy v. Kern, 280 N.Y.375, 378-379 (1939); Also: Larson v. Tangalos, 113 Misc.2d 696, 698, 449 N.Y.S.2d 903 (Sup. Ct, Chautauqua Co., 1982)

Once the County Legislature made the Board's 2003 appropriation, Defendants lost all control over the use of the funds. Fugazy v. Kern, supra, 280 N.Y. at 378-379; Mohr v. Giambra, 7 Misc.3d 723, 791 N.Y.S.2d 351 (Sup. Ct, Erie Co., 2005), aff'd on op. below, 27 A.D.3d 1185, 810 N.Y.S.2d 700 (4th Dep't, 2006); Graziano v. County of Albany, 2003 WL 21497332 (N.Y. Sup.), p.3, aff'd w/o op., 309 A.D.2d 1062, 766 N.Y.S.2d. 909 (3rd Dep't, 2003), rev'd other, 1 N.Y.3d 507, 776 N.Y.S.2d 539 (2004). The Legislature "does not say, nor has it the power of saying, who shall fill the positions, or that the salary fixed for a position shall be paid to any named individual", Thoma v. The City of New York, 263 N.Y. 402, 405 (1934); Divisich v. Marshall, 281 N.Y. 170, 173 (1939). The "provisions of the Election Law, a general law, cannot be superseded by the County Charter". Mohr v. Giambra, supra, 7 Misc.3d at 72, 791 N.Y.S.2d at 354.

Plaintiff was an employee of the Board until her resignation. Lewin v. LaGuardia, 175 Misc. 165, 168, 22 N.Y.S.2d 409, 411-412 (Sup. Ct, N.Y. Co., 1940), aff'd w/o op. 261 A.D. 940, 26 N.Y.S.2d 493 (1<sup>st</sup>Dep't, 1941), aff'd, 287 N.Y. 28 (1941); O'Reilly v. Nedelka, 212 A.D.2d 714, 622 N.Y.S.2d 794 (2nd Dep't, 1995); 1979 N.Y. Op. Atty Gen. (Inf.) No. 177, 1979 WL 34357 (N.Y.A.G.), p.1; 1977 N.Y. Op. Atty Gen. No. 204 [Informal)], 1977 WL 25483 (N.Y.A.G.), p.1. "The County's duty in paying the election clerks is purely ministerial". Gimbrone v. Stevenson, supra, 8 A.D.3d at 961, 778 N.Y.S.2d at 801.) She had the right to attend the Board's offices to work. Sinicropi v. Bennett, 92 A.D.2d 309, 315, fn3, 460 N.Y.S.2d 809, 814, fn3 (2nd Dep't, 1983), aff'd, 60 N.Y.2d 918, 470 N.Y.S.2d 580 (1983) Only the Commissioners could exclude her:

That portion of the County Legislature's resolution, which was
to treat unauthorized persons as trespassers, as it was  interpreted to

include the offices of the Board of Elections, is beyond the power of the Legislature…. [O]nly the Commissioners of Elections can determine who is an unauthorized person on its premises (Election Law Sec. 3-300). Exhibit G, Hill v. the County of Sullivan, Sup. Ct, Sull. Co., 2003) Interim Decision and Order, April 9, 2003, p. 7.

Statutory law in New York has given the Commissioners these powers exclusively since at 1922, 80 years before 2003, without interruption. Laws of 1922, ch. 588, sec, 36; Laws of 1949, ch. 100, sec. 36; Laws of 1962, ch. 732, sec. 1; Laws of 1971, ch 1125, sec. 1; Laws of 1973, ch 896, sec. 5; Laws of 1976, ch. 233, sec. 1.

*2: Under New York case law, the "Appoint/Terminate" rule, the Commissioners, having the sole power to appoint Plaintiff, also had the sole power to suspend or fire her, and the sole power to abolish her position. Defendants lacked any such power.*

Section 3-300 giving the Commissioners the sole power to appoint their clerks, automatically gives them the exclusive power to suspend or fire Plaintiff, to change her salary, or to abolish her position. This rule (hereinafter the "Appoint/Terminate" rule) has existed as a matter of case law going back to the early years of the Republic. Plaintiff has been unable to find any case law to the contrary. Indeed, the "appoint/terminate" rule is so strong that the language of Election Law Sec. 3-300 giving the Commissioners the power to terminate is mere surplusage. Thus, in 1891, the Court of Appeals held:

> The absolute power of appointment carried with it the power to dismiss, in the absence of some provision limiting such power by express words or necessary implication. The words of the statute permitting dismissal from the service at pleasure added nothing to the power of the board in that regard… Peo. ex rel. Cline v. Robb, 126 N.Y. 180, 185 (1891). (emphasis supplied). See also, Peo. ex rel. Ward v. Drake, 43 A.D. 325, 60 N.Y.S. 309, 312 (4th Dep't, 1899), aff'd w/o op., 161 N.Y. 642 (1900).

a:     Only the Commissioners  Have the Power to Fire Plaintiff, not the Defendants.

The "Appoint/Terminate" rule is deeply embedded in New York law. In 1848 the New York Supreme Court said the rule was already "uniformly exercised" and "without any doubt as to its constitutionality." Peo. ex rel. Moore v. the Mayor, etc., 5 Barb. 43, 47 (Sup. Ct, N.Y. Co., 1848). The Supreme Court of the United States had, in 1839, upheld the "Appoint/Terminate" rule under the Constitution, noting that it is the "settled usage

and practical construction of the Constitution and law", <u>Ex parte Hennen</u>, 38 U.S.230,
260 (1839), going back to the "organization of the three great departments of state, war,
and treasury, in the year 1789" and to "[w]hen the navy department was established in the
year 1798." <u>Id.</u>, 38 U.S. at 259. Two years after <u>Moore</u>, the Superior Court held:

> It is contended that the common council had no authority of removal or
> substitution as thus exercised; that the power of appointment was a naked power,
> and that when once executed, it was exhausted. There is no weight to this
> objection….The law authorizes the common council to appoint the assessors,
> and the right of removal and substitution is implied. <u>Laimbeer v. the City of New
> York</u>, 4 Sandf. S.C.R. 109, 111 (Sup. Ct, N.Y. Co., 1850).

<u>Moore</u>, <u>Hennen</u>, and <u>Laimbeer</u> are all cited in <u>Peo. ex rel. Sims v. Board of Fire
Commissioners, etc.</u>, 73 N.Y. 437 (1878), holding that the power to discharge is an:

> …implied power, which in the absence of some statutory provision
> on the subject rests with the body having the power of appointment.
> The power to appoint to office or place where the term and tenure are
> not defined necessarily carries with it the power of removal. <u>Id.</u>, 73 N.Y. at 441)

The line of opinions of the courts, of the Attorneys General of the State of New
York and even of the Sullivan County Attorney restating the "Appoint/Terminate" rule is
unbroken. Because the history and unquestioned authority of the "Appoint/Terminate"
rule is so central to this litigation, particularly in regard to qualified immunity, Plaintiff
will now cite some of that long, continuing, uninterrupted, and uncontradicted history:
<u>Peo. ex rel. Travis v. Durston, Warden, etc.</u>, 3 N.Y.S. 522, 525 (Sup. Ct, Monroe Co.,
1888); <u>Peo. ex rel. Cline v. Robb, supra</u>, 126 N.Y. at 182; <u>Peo ex rel. McCullough v.
Cram</u>, 15 Misc. 12, 36 N.Y.S. 1117, 1118 (Super. Ct, Gen Term, N.Y. Co., 1895); <u>Peo.
ex rel. Corrigan v. The Mayor, etc.</u>, 149 N.Y. 215, 223-224 (1896) ("a well-established
rule of law"); <u>Thoma v. The City of New York, supra</u>, 263 N.Y. at 405-406; <u>Shatter v.
Moses</u>, 241 A.D. 485, 487, 273 N.Y.S. 164, 167 (1st Dep't, 1934), <u>aff'd w/o op.</u> 266 N.Y.
413 (1934); <u>Lynch v. O'Leary</u>, 166 Misc. 567, 569, 2 N.Y.S.2d 588, 591 (Sup. Ct,
Monroe Co., 1938);. <u>Goodman v. Ralph</u>, 294 N.Y. 169, 171 (1945); <u>Lawson v. Cornelius</u>,
38 Misc.2d 431, 436, 238 N.Y.S.2d 238, 245 (Sup. Ct, Albany Co., 1963); <u>Beers v.
Nyquist</u>, 72 Misc.2d 210, 212, 338 N.Y.S.2d745 (Sup. Ct, Albany Co., 1972); <u>1974 N.Y.

Op. Atty Gen. No. 204 [Informal)], supra, 1974 WL 324345 (N.Y.A.G.), p.1 ("an accepted principle of law"); Harrison Central S. D., v. Nyquist, 83 Misc.2d 1042. 373 N.Y.S.2d 796 (Sup. Ct, Albany Co., 1975); 1977 N.Y. Op. Atty Gen. No. 224 [Informal)], supra, 1977 WL 25483 (N.Y.A.G.), p.1; 1979 N.Y. Op. Atty Gen. (Inf.) No. 177, supra, 1979 WL 34357 (N.Y.A.G.), p.1; Waters v. City of Glen Cove, 181 A.D.2d 783, 580 N.Y.S.2d 796, 797  (2nd Dep't, 1992) ("an elementary principle of law"); Bishop v. Village of Spring Valley, 213 A.D.2d 441, 624 N.Y.S.2d 618, 619 (2nd Dep't, 1995); Opinion of the State Board of Elections, Exhibit 3; Correia v. Incorporated Village, etc., 12 A.D.3d 599, 600, 785 N.Y.S.2d 483, 485 (2nd Dep't, 2004); McComb v. Reasoner, 29 A.D.3d 795, 798, 815 N.Y.S.2d 665, 668 (2nd Dep't, 2006).

Tellingly, in 1996, Ira Cohen the then Sullivan County Attorney, who was also the County Attorney in 2002-2003, rendered the same opinion:

> This opinion recognizes the special and unique make up of the Board of Elections and the autonomy of the Commissioners of Election (sic) pursuant to the mandates of the New York State Constitution and the Election Law of the State of New York. The Commissioners have the statutory authority to appoint, and at their pleasure to remove, Clerks and other employees, to fix their number, proscribe (sic) their duties, etc. Opinion of the Sullivan County Attorney, Exhibit 2. (emphasis supplied)

b:      The "Appoint/Terminate" Rule Also Gives the Commissioners the Exclusive Powers to Suspend Plaintiff, to Make Decisions Concerning the Use of Budgeted Funds, and to Abolish Plaintiff's Position; None of the Defendants Had Any Such Power or the Power to Instruct the Commissioners How to Conduct Their Affairs

The "Appoint/Terminate" rule carries with it corollaries which enhance the Commissioners' exclusive powers, negating any claim to such powers by the Defendants.

i:      *The Power to Suspend Plaintiff is Vested Solely in the Commissioners.*

A corollary to the "Appoint/Terminate" rule also grants to the Commissioners the exclusive power to suspend Plaintiff. Sinicopi v. Bennett, supra, 92 A.D. 26 at 315, fn. 3, 460 N.Y.S.2nd at 814, fn. 3. In Kreppein v. Downs, where two judges jointly made an appointment, the Court held that one judge, "acting alone, had no power to suspend

petitioner", the suspension was "void and of no effect", and "such punishment …could be imposed solely by the two …jointly, acting under the power of removal..." <u>Kreppein v. Downs</u>, 272 A.D. 452, 454, 72 N.Y.S.2d 150, 152 (2nd Dep't, 1947)

Until Plaintiff might be legally fired, she "continues in that employment and is entitled to the pay for the position". <u>1977 N.Y. Op. Atty Gen. (Inf.) No. 177</u>, <u>supra</u>, 1977 WL 25483 (N.Y.A.G.), p.1; <u>Hiscox v, Holmes</u>, 239 A.D. 2d 602, 603, 269 N.Y.S.2d 224 (3rd Dep't, 1934). Defendants had to continue paying her, their payments being "purely ministerial". <u>Gimbrone v. Stevenson, supra</u>, 8 A.D.3d at 961, 778 N.Y.S.2d at 801.)

Nor could Defendants use the budgetary process to eliminate Plaintiff's salary:

> …resolution eliminating benefits or salary cannot be operative because it is an attempt to accomplish indirectly that which the [County] is powerless to do directly. <u>1979 N.Y. Op. Atty Gen. (Inf.) No. 177</u>, <u>supra</u>, 1979 WL 34357 (N.Y.A.G.), p.1. <u>Conroy v. La Guardia</u>, 17 N.Y.S.2d 387, 387-388 (Sup. Ct, Bx Co., 1939).

ii:     *The Power to Abolish Plaintiff's Position is Vested Solely in the Commissioners*

Another corollary to the "Appoint/Terminate" rule grants the Commissioners the exclusive power to abolish Plaintiff's position. Sec. 3-300 giving the Commissioners the power to create Plaintiff's job also gave them the sole power to abolish her job because the "power of creation carried with it power of abolition." <u>Schmidt v. Board of Supervisors, etc.</u>, 244 A.D. 493, 494, 279 N.Y.S. 855, 856  (4th Dep't, 1935):

> …in the absence of any direct statutory provision to the contrary a position can be abolished only by the same agencies that created it, and therefore, … is not abolished until appropriate action to that effect is taken by such a contingency. <u>Spawn v. Fleming</u>, 208 A.D. 582, 589, 203 N.Y.S. 821, 827 (3rd Dep't, 1924) <u>amended and mod. on different grounds</u>, 211 A.D. 823, 207 N.Y.S. 923 (3rd Dep't, 1924).

B:     *Plaintiff Had a Constitutionally Protected Property Interest in Her Employment Even Though She Was An At-will Employee of the Board of Elections*

Although Plaintiff was an at-will employee of the Commissioners, she had a constitutionally protected property interest in her job. (Even an at-will employee, has the right not to be punished for exercise of her First Amendment rights. <u>See</u>, POINT III A Bill of Rights , <u>infra</u>.)

But Plaintiff's rights are not so limited; she had a constitutionally protected property right in her employment itself, which only the Commissioners could take away.

Plaintiff's property interest in her job "must be decided by reference to state law." Bishop v. Wood, 426 U.S. 341, 344, 96 S.Ct 2074, 2077 (1976); Board of Regents, etc. v. Roth, 408 U.S. 564, 577, 92 S.Ct 2701, 2709 (1972); Ezekwo v. NYC Health & Hospital Corp., 940 F.2d 775, 783 (2nd Cir., 1991), cert. denied, 502 U.S. 1013, 112 S.Ct 657 (1991); Ciambriello v. County of Nassau, 292 F.3d 307, 317 (2nd Cir., 2002); Economico v. Village of Pelham, 50 N.Y.2d 120, 125, 428 N.Y.S.2d 213, 215 (1980); Catterson v. Caso, 472 F.Supp. 833, 839 (E.D.N.Y., 1979).

Even as an at-will employee of the Commissioners, under New York law, she had a property interest in her job. Plaintiff continued in her job until she might be lawfully discharged, which was never done. Gould v. Board of Education, etc., 81 N.Y.2d 446, 451, 599 N.Y.S.2d 787, 789 (1993); Lezette v. Board of Education, etc., 35 N.Y.2d 272, 278-279, 360 N.Y.S.2d 869, 874 (1974); Golomb v. Board of Education, etc., 92 A.D.2d 256, 257-258, 460 N.Y.S.2d 805, 806-807 (2nd Dep't, 1983); Lindsey v. Board of Education, etc., 72 A.D.2d 185, 189, 424 N.Y.S.2d 575, 578 (4th Dep't, 1980); Farrell v. Board of Education, etc., 64 A.D.2d 703, 407 N.Y.S.2d 540, 541 (2nd Dep't, 1978); 1977 N.Y. Op. Atty Gen. No. 224 [Informal)], 1977 WL 25483 (N.Y.A.G.), p.1; 1974 N.Y. Op. Atty Gen. No. 204 [Informal)], 1974 WL 324345 (N.Y.A.G.), p.2.

Under New York law, Plaintiff's rights in her employment are classified as "*property* rather than *contract*." Sinicropi v. Bennett, supra, 92 A.D.2d a5t 314, fn2, 460 N.Y.S.2d at 813, fn2 (2nd Dep't, 1983) (emphasis in original). Under New York law, as a continuing employee, Plaintiff had rights in addition to the right to remain in her job:

> - She had the right to be discharged only as provided by statute. Gould v. Board of Education, etc., supra, 81 N.Y.2d at 451, 599 N.Y.S.2d at 789; Lezette v. Board of Education, etc., supra, 35 N.Y.2d at 278-279, 360 N.Y.S.2d at 874 Golomb v. Board of Education, etc., supra, 92 A.D.2d at 257-258, 460 N.Y.S.2d at 806-807; Lindsey v. Board of Education, etc., supra, 72 A.D.2d at 189, 424 N.Y.S.2d at 578; Board of Education, etc. v. Allen, 30 A.D.2d 742, 291 N.Y.S.2d 243, 244-245 (3rd Dep't, 1968).

- She had the right to be fired or disciplined only by officials having the power to do so, in this case by the Commissioners acting together. Frasier v. Board of Education, supra, 71 N.Y.2d at 768, 530 N.Y.S.2d at 82.

- She had the right to receive her salary. Hiscox v, Holmes, supra, 239 A.D. 2d at 603, 269 N.Y.S.2d 224; Sinicropi v. Bennett, supra, 92 A.D.2d 315, fn3, 460 N.Y.S.2d at 814, fn3; Emmitt v. The Mayor, etc., 128 N.Y. 117, 120 (1891); 1974 N.Y. Op. Atty Gen. No. 204 [Informal]], supra, 1974 WL 324345 (N.Y.A.G.), p.2.

- She had the right not to be suspended without pay. Sinicropi v. Bennett, supra, 92 A.D.2d at 315, fn3, 460 N.Y.S.2d at 814, fn3; Kreppein v. Downs, supra, 272 A.D. at 454, 72 N.Y.S.2d at 152.

- She had the right to render the services for which she was employed. Sinicropi v. Bennett, supra, 92 A.D.2d at 315, fn3, 460 N.Y.S.2d at 814, fn3.

- She had the right to the "benefits" of her position, Board of Regents, etc. v. Roth, supra, 408 U.S. at 577, 92 S.Ct at 2709, 33 L. Ed.2d 548; Frasier v. Board of Education, etc., 130 A.D.2d 746, 516 N.Y.S.2d 44, 45 (2nd Dep't, 1987), rev'd on other grounds, 71 N.Y.2d 763, 530 N.Y.S.2d 79 (1987). Sinicropi v. Bennett, supra, 92 A.D.2d at 314, fn2, 460 N.Y.S.2d at 813, fn2; McManus v. Board of Education, etc. 87 N.Y.2d 183, 638 N.Y.S.2d 411 (1995); Gould v. Board of Education, etc., 81 N.Y.2d at 451, 599 N.Y.S.2d at 789; Lindsey v. Board of Education, etc., 72 A.D.2d at 189, 424 N.Y.S.2d at 578; Lieberman v. Reisman, supra, 857 F.2d 896, 897 (2nd Cir., 1988); Frasier v. Board of Education, etc., supra, 130 A.D.2d 746, 516 N.Y.S.2d at 45.

- She had the right not to be locked out of her position or her office. Sinicropi v. Bennett, supra, 92 A.D.2d 315, fn3, 460 N.Y.S.2d at 814, fn3.

9

These rights are part of a right to be left alone in her job until legally terminated:

> Generally any substantial interference with a public employee's
> right to render services and to receive his wages or salary is deemed an ouster
> under the property analysis described [above]. This would include an
> unauthorized lockout of a probationary employee… Likewise, a suspension is
> merely one species of ouster... Hence, absent specific authority to suspend an
> officer or employee, a public employer is not permitted to oust (i.e., dispossess)
> him in the guise of suspension on the ground that it does have authority to remove
> (i.e., dismiss) him by stripping him of both title and possession. Sinicropi v.
> Bennett, supra, 92 A.D.2d at 315, fn3, 460 N.Y.S.2d at 814, fn3.

Plaintiff was not a generalized "at-will" employee, but an "at-will" employee specifically of the Commissioners. Being "at-will" does not give every Tom, Dick, and Jane the power legally to suspend her. Defendants were all strangers to her employment.

Defendants' exclusive reliance on Alberti v. County of Nassau, 393 F.Supp. 151 (E.D.N.Y., 2005) is totally misplaced. Alberti does not involve a case in which strangers exercised the power to terminate an "at-will" employment. The Alberti plaintiffs did not question the power of the county officials to fire them. The general proposition of Alberti is inapplicable here. Plaintiff does not claim that her "at-will' employment cannot be terminated at the will of her appointing power. To the contrary, she claims that the Defendants had no power to interfere with her employment, to which they are strangers.

Defendants' reliance on Alberti ignores that Court's caveat that the general rule does not survive if the Plaintiff can show some other "more specific" law negating the rule. Id. at 162, Here, as shown above, Plaintiff has demonstrated the overriding principle that Defendants had no power to terminate or otherwise affect her employment, "at-will" or not. To that extent Plaintiff has a property right protected under New York law.

POINT III:    PLAINTIFF STATES CLAIMS AGAINST ALL OF THE
DEFENDANTS FOR DUE PROCESS AND EQUAL PROTECTION VIOLATIONS

A:    Plaintiff States Claims for Violation of Her Rights to Due Process

Plaintiff asserts valid due process rights, procedural and substantive, all of which Defendants violated. Defendants usurped her property rights without granting her any hearing, without any legal power to do so in an intentional and shocking display of raw

power.  In <u>Zinermon v. Burch</u>, 494 U.S. 113, 110 S. Ct 975 (1990) the Supreme Court identified "three kinds of Sec. 1983 claims that may be brought… under the Due Process Clause of the Fourteenth Amendment." <u>Id.</u>, 494 U.S. at 125, 110 S.Ct, at 983:

> First, the Clause incorporates many of the specific protections defined in the Bill of Rights…Second, the Due Process clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them"….[Third], [t]he Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. <u>Id.</u>, 494 U.S. at 125, 110 S.Ct, at 983.

<u>*Bill of Rights*</u>:  Plaintiff alleges three distinct Bill of Rights violations: (1) Defendants usurped her property. (2) Defendants violated her liberty rights, expelling her from the Board's offices; and (3) Defendants violated her 1st Amendment rights by retaliating against her:

> A plaintiff may bring suit under Sec. 1983 for… violation of his rights to, e.g. freedom of speech or freedom from unreasonable searches and seizures. <u>Zinermon v. Burch, supra</u>, 494 U.S. at 125, 110 S.Ct, at 983.

Defendants argue only that Plaintiff had no usurpable property right. They seem to acknowledge that if such a property right exists, they had no right, constitutionally, to take it. Therefore, Plaintiff will not extend this brief by further exploration of the issue.

Plaintiff had protected First Amendment rights to free speech and free political association protectable under Section 1983. Defendants' attempt to stigmatize Plaintiff as holding a "political, patronage position", <u>Defendants' memorandum</u>, p.4, is unavailing. First, nothing in the complaint supports that Plaintiff held a "political, patronage position". All that can be deduced from the complaint is that under Election Law Sec. 3-300 Plaintiff had to be a member of one of the two major political parties.

Second, an at-will employee has rights to free speech and free association, which "constitute the core of those activities protected by the First Amendment." <u>Rutan v. Republican Party of Illinois</u>, 497 U.S. 62, 69, 110 S. Ct 2729, 2734, 111 L. Ed.2d 52 (1990). <u>Rutan</u> expressly rejected the argument that First Amendment free speech rights do not extend to at-will employees. <u>Id</u>., 497 U.S. at 68-76, 110 S. Ct at 2734-2738:

The Supreme Court has also held "that even an employee with no contractual right to retain his job cannot be dismissed for engaging in constitutionally protected speech". Branti v. Finkel, 445 U.S. 507, 514, 100 S, Ct 1287, 1293 (1980):

> Taking adverse employment action against a non-policymaking employee for political reasons is a violation of that employee's First Amendment rights. Cotarelo v. Village of Sleepy Hollow P.D., 460 F.3d 247, 253 (2d Cir.,2006). See also, Vezzetti v. Pelligrini, 22 F.3d 483, 486-487 (2nd Cir., 1994).

Third, Defendants' reliance on Alberti v. County of Nassau, 393 F.Supp. 151 (E.D.N.Y., 2005) is flawed by their misconception that Plaintiff is their at-will employee. Furthermore, Defendants misread their passage from Alberti. Defendant was only a clerk: her job was not of a "confidential nature"; did not involve the "performance of duties requiring the exercise of authority or discretion at a high level"; and had no "need for 'some expertise or personal qualities which can not be measured by a competitive exam'". Defendants' memorandum, p 4, quoting Alberti, supra, 393 F.Supp.2d at 166.

Again, assuming that Plaintiff was Defendants' at-will employee, it has been the law in this Circuit since 1988 that she may not be punished for the exercise of First Amendment rights[1]. Lieberman v. Reisman, supra, 857 F.2d at 900.

Finally, Plaintiff did not surrender her right to free speech by becoming a public employee. Mt. Healthy City S.D. v. Doyle, supra, 429 U.S. at 283-284, 97 S. Ct at 574. The complaint alleges that Plaintiff engaged in protected speech on matters of public concern. That speech is protected from Defendants' retribution. Cotarelo v. Village of Sleepy Hollow P.D., supra, 460 F.3d at 252-253; Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 780-781 (2nd Cir., 1991), cert. denied, 502 U.S. 1013, 112 S.Ct 65 (1991).

*Substantive Due Process:* Plaintiff also has a claim for violation of her substantive due process rights. Again, one starts with Plaintiff's property right in her job. Once that is

---

[1] Whether Defendants fired Plaintiff or merely suspended her or took some lesser action against her, they certainly subjected her to adverse employment actions: Rutan v. Republican Party of Illinois, supra, 497 U.S. at 76, 110 S. Ct at 2737, 111 L. Ed.2d 52 [promotions, transfers, and hiring recalls]; Mt. Healthy City S.D. v. Doyle, 429 F.3d 274, 283-284, 97 S. Ct 568, 574 [1977] [rehiring]; O'Connor v. Pierson, 426 F.3d 187, 197 [2nd Cir. 2005] [suspension without pay; unpaid sick leave]; Narumanchi v. Board of Trustees, etc., 850 F.2d 70, 72-73 [2nd Cir., 1988] [suspension without pay]; Richardson v. City of Saratoga Springs, 246 A.D.2d 900, 667 N.Y.S.2d 995 [3rd Dep't, 1998] [detrimental adjustment in duties; denial of promotion].

established, Defendants cannot by "arbitrary, wrongful government actions" deny Plaintiff her right. Zinermon v. Burch, supra, 494 U.S. at 125, 110 S. Ct, at 983.

In County of Sacramento v. Lewis, 523 U.S. 833, 118 S. Ct at 1716, 140 L. Ed. 1043 (1998), the Supreme Court summarized the principles governing actions for denial of substantive due process (omitting internal quotation marks):

- …we have understood the core concept [of substantive due process] to be protection against arbitrary action. Id. 523 U.S. at 845, 118 S. Ct at 1716, 140 L. Ed. 1043
- …[substantive due process is] intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private right and distributive justice… Id. 523 U.S. at 845, 118 S. Ct at 1716, 140 L. Ed. 1043
- …the Due Process Clause was intended to prevent government officials from abusing [their] (sic) power, or employing it as an instrument of oppression. Id. 523 U.S. at 846, 118 S. Ct at 1716, 140 L. Ed. 1043
- … the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the conscience. Id. 523 U.S. at 847, FN, 8, 118 S. Ct at 1717, fn8, 140 L. Ed. 1043, FN 8.
- Historically, this guarantee of due process has been applied to *deliberate* (sic) decisions of governmental officials to deprive a person of life, liberty, or property. Id. 523 U.S. at 849, 118 S. Ct at 1718.

Also, "in those circumstances when actual deliberation is possible, a showing of deliberate indifference will establish Fourteenth Amendment liability" providing a substitute for intentional conduct. Pabon v. Wright, 459 F.3d 241, 251 (2nd Cir., 2006).

Defendants' conduct towards Plaintiff was clearly deliberate and intentional; at very least, their conduct showed deliberate indifference to Plaintiff's rights.

Defendants' misconduct towards Plaintiff rights creates substantive due process claims under both aspects defined by the Supreme Court: (1) Defendants took Plaintiff's property without process of any kind and (2) Defendants acted so arbitrarily against Plaintiff's property and freedom rights as to shock the conscience in a constitutional sense. Defendants offer no governmental interest that was satisfied by their arbitrary conduct towards Plaintiff and her property and freedom rights.

Defendants infringed two different constitutionally protected freedom rights of the Plaintiff: (1) her right to personal freedom, by expelling her from the Board's offices;

and (2) her right to free speech, by retaliating for her political activities. <u>County of Sacramento v. Lewis, supra</u>, 523 U.S. at 845, 118 S. Ct 1708.

Defendants' conduct shocks the conscience in a constitutional sense, not only because it had no legal basis, but also because they continued their oppression of Plaintiff for almost a year (April 9, 2003 to March 14, 2004) after they admitted to Judge Clemente that they had no legal authority for their continuing misconduct against her.

Finally, "whether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken", meaning that "whether the Board's actions were conscience-shocking can [not] be decided at the summary judgment stage". <u>O'Connor v. Pierson, supra</u>, 426 F.3d 203. How less possible is it to decide the "conscience-striking" effect of Defendants' conduct solely on the basis of the complaint.

<u>*Procedural Due Process*</u>: Again, one starts with Plaintiff's property right. Once that is established, Defendants could not, even if they had the power to do so, take punitive action against Plaintiff without giving her notice and an opportunity to be heard. Defendants "could not deprive [her] of this property without due process." <u>Cleveland Bd of Ed. v. Loudermill</u>, 470 U.S. 532, 538, 105 S. Ct 1487, 1491, 84 L. Ed .3d 494 (1985):

> An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case."… We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* (<u>sic</u>) he is deprived of any significant interest."… This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. <u>Cleveland Bd of Ed. v. Loudermill, supra</u>, 470 U.S. at 542, 105 S. Ct at 1493, 84 L. Ed.3d 494.

That right was well established by <u>Cleveland Bd of Ed. v. Loudermill</u> in 1985, 17 years before Defendants acted against Plaintiff. The question of "whether this type of restricted property interest would fall within the ambit of <u>Loudermill</u> was … clearly established, … [when] the New York Court of Appeals set the matter to rest in …October 1991", more than 11 years before Defendants proceeded against Plaintiff. <u>Prue v. City of Syracuse</u>, 26 F.3d 14, 18 (2nd Cir., 1994). (Indeed, the right to a pre-determination

hearing before depriving a plaintiff of an employment property right was, by 1999, "defined with 'reasonable specificity' and supported by the decisional law of the Supreme Court as well as the Court of Appeals for the Second Circuit." Scheiner v. N.Y.C. Health and Hosp. Corp., 1999 WL 771383 [S.D.N.Y.], p. 12.)

The value of notice and an opportunity to be heard is demonstrated by Defendants' "restoration" of Plaintiff as of March 15, 2004:

> The fact that the Commission saw fit to reinstate Donnelly suggests that an error might have been avoided had he been provided an opportunity to make his case to the Board. Cleveland Bd of Ed. v. Loudermill, supra, 470 U.S. at 544, 105 S. Ct at 1494, 84 L. Ed.3d 494.

B: *Plaintiff States a Claim for Violation of Her Right to the Equal Protection of Laws*

Defendants not only illegally enforced Resolution 06-03, Exhibit J, against Plaintiff, they enforced it only against Plaintiff. As such only person, Plaintiff constitutes a class-of-one under the Equal Protection Clause of the 14th Amendment. Village of Willowbrook v. Olech, 528 U.S, 562, 564-565, 120 S.Ct 1073, 1074-1075 (2000).

Plaintiff can prove the "high degree of similarity between" herself and the other persons against whom the Resolution was not enforced. Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2nd Cir., 2006). The Resolution is directed against the entire general public, to which, by Defendants' definition, Plaintiff belonged. Nothing in the Resolution could be used to distinguish its enforcement against Plaintiff from that of the rest of the general public; yet, it was enforced only against Plaintiff. Under these circumstances:

> (i)   no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and
>
> (ii)  the similarity in circumstances and differences in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake. Clubside, Inc. v. Valentin, 468 F.3d at 159. To the same effect: Neilson v. D'Angelis, 409 F.3d 100, 105 (2nd Cir., 2005);

Plaintiff's class-of-one status arises from Defendants' "selective treatment … based on impermissible considerations", including  "intent to inhibit or punish the

exercise of constitutional rights, *or malicious or bad faith intent to injure a person"* (sic). <u>Bizzarro v. Miranda</u>, 394 F.3d 82, 86 (2nd Cir., 2005).

<u>C</u>:      *Plaintiff States Claims Against the Defendant County*

Defendant County is liable to Plaintiff for the conduct of its high-ranking officials.  Defendants' argument, in POINT IV of their memorandum is based on only half of the applicable rule. Defendants ignore the other half: that municipal "policy" is established when the actions complained of are undertaken by high-ranking officials of the government, as enunciated by the Supreme Court in one of the cases half cited by defendants: <u>Board of the County, etc. v. Brown</u>, 520 U.S. 397, 117 S. Ct 1382 (1997):

> Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the <u>decisions</u> of its duly constituted legislative body or <u>of those officials whose acts may fairly be said to be those of the municipality</u>. <u>Id,</u>, 520 U.S. at 403-404, 117 S.Ct at 1388. (emphasis supplied); <u>Id,</u>, 520 U.S. at 405, 117 S.Ct at 1389.

Defendant County is liable for the "*deliberate* (<u>sic</u>) conduct" of its high-ranking officials, the individual defendants herein, <u>Id,</u>, 520 U.S. at 403-404, 117 S.Ct at 1388, for "those whose edicts or acts may fairly be said to represent official policy".  <u>Morris v. Lindau</u>, 196 F.3d 102, 111 (2nd Cir., 1999).


POINT IV:     THE DEFENDANTS DO NOT HAVE ABSOLUTE IMMUNITY

Absolute immunity is given to officials only for legislative or judicial acts. Defendants are not accused of any such act. Defendants' claim to absolute immunity is based on a misconception that they were part of the legislative process. They were not. None of them is entitled to absolute immunity.

<u>A</u>:      *Defendants Have Not Sustained Their Burden of Establishing Absolute Immunity*

Whether Defendants have absolute immunity depends on a "functional" analysis of their actions: If they acted legislatively or judicially, they are absolutely immune; if they acted administratively, they are not. <u>Forrester v. White</u>, 484 U.S. 219. 108 S.Ct 538(1988); <u>Harhay v. Town of Ellington, etc.</u>, 323 F.3d 206, 210-211 (2nd Cir., 2003).

Defendants have not met their burden to establish absolute immunity, as a matter of law. To establish their claim, Defendants must overcome three principles:

> (1) "This [Supreme] Court has generally been quite sparing in its recognition of claims to absolute immunity." <u>Forrester v. White, supra</u>, 484 U.S. at 224. 108 S.Ct at 542. "This [Supreme] Court has refused to extend absolute immunity beyond a very limited class of officials, including the President of the United States, legislators carrying out their legislative functions, and judges carrying out their judicial functions, whose special functions or constitutional status requires complete protection from suit." <u>Hafer v. Melo</u>, 502 U.S. 21, 29, 112 S. Ct 358, 363 (1991).

> (2) "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties," and hence courts are generally "quite sparing" in their recognition of absolute immunity. <u>DiBlasio v. Novello</u>, 344 F.3d 292, 296 (2nd Cir., 2003); and

> (3) Officials who seek [absolute] exemption from personal liability have the burden showing that such an exemption is justified… <u>Id.</u>, 484 U.S. at 224. 108 S.Ct at 542: <u>Hill v. City of New York</u>, 45 F.3d 653, 660 (2nd Cir., 1995).

<u>B</u>:   <u>*"Functionally", Defendants Acted Only Administratively*</u>

Defendants were not legislators or judges nor did they act judicially. The only issue before this Court is whether their acts were functionally legislative. They were not.

Even if Defendants were legislators or judges, they would not be entitled to absolute immunity because the "functional" nature of their conduct was administrative, not legislative or judicial. <u>Harhay v. Town of Ellington, etc., supra</u>, 323 F3d at 210.

Both generically and specifically, Defendants' actions were administrative, not legislative or judicial and, therefore, not entitled to absolute immunity.  Defendants' assertion that they were acting legislatively misapprehends both the nature of the legislative process and the nature of their conduct which is complained of in this action.

i:   *Plaintiff Does Not Complain of Any "Legislative" Conduct of the Defendants*

Plaintiff sues only for post-legislative activities, conduct in administering the budget and exclusion legislation after their adoption. No legislative activity, such as proposing bills, voting on them, and/or signing them into law, is involved on this case.

The two cases cited by Defendants actually define the legislative process so as to exclude their conduct. In Gordon v. Katz, 934 F.Supp. 79 (S.D.N.Y., 1995), aff'd, 101 F.3d 1393 (2nd Cir., 1996), Magistrate Fox defined the limits of the legislative process as "proposing, voting on, and adopting" the legislation. Id., at 705. Orange v. County of Suffolk, 830 F.Supp. 701 (E.D.N.Y., 1993), added signing of the bill into law. Id. at 706.

If the enforcement of legislation were itself to be defined as "legislative", all administrators would be entitled to absolute immunity in all cases because all their duties involve enforcement of legislation.

Furthermore, Defendants acknowledge that the County Legislature did not abolish Plaintiff's position and that the "adoption of the 2003 Budget did NOT (sic) constitute a termination of the two Senior Clerk positions." Affidavit of Samuel Yasgur, para. 17. Since Ms. Gabriel was no longer in the employ of the Board, Exhibit 4, the Defendants acted solely against the Plaintiff and solely by administrative, not legislative, action.

Defendants are charged only with conduct taken after the legislation was adopted.

Defendants do not have absolute immunity "due to the strictures of Rule 12(b)(6) because the facts as alleged in the complaint do not establish that their acts were legislative, as opposed to administrative, in nature." Brennan v. Straub, supra, 2003 WL 554620, (S.D.N.Y.) at p.4.

ii    *Defendants' Personnel Decisions Taken Against a Single Individual, the Plaintiff, Are Administrative in Nature and Not Entitled to Absolute Immunity*

Defendants' conduct (notwithstanding their shifting characterizations of their conduct to Plaintiff) consisted solely of employment decisions: trying "laying off" Plaintiff, to fire her, to suspend her, to abolish her position, to deny her her salary, and to deny her her benefits. and refusing to reinstate her to her position and excluding her from her workplace. See, Morris v. Lindau, supra, 196 F.3d at 110; Dobosz v. Walsh, 892 F.2d 1138, 1139-1140 (2nd Cir., 1989); Detz v. Hoover, 539 F.Supp. 532, 534 (E.D.Pa., 1982):

> Discretionary personnel decisions, even if undertaken by public officials who otherwise are entitled to immunity, do not give rise to immunity because such decision making is no different in substance from that which is enjoyed by other actors. Harhay v. Town of Ellington, supra,  323 F3d at 210-211 (2nd Cir., 2003).

Defendants made employment decisions, which are solely, "functionally" administrative.  Dobosz v. Walsh, supra, 892 F.2d 1138, 1139-1140; Forrester v. White, supra, 484 U.S. at 229. 108 S.Ct at 545; Jessen v. Town of Eastchester, supra, 114 F3d at 8; Harhay v. Town of Ellington, etc., supra, 323 F3d at 210-211; Forrester v. White, supra, 484 U.S. at 229. 108 S.Ct at 545. Firing is "an administrative act that legislative immunity does not protect." Jessen v. Town of Eastchester, supra, 114 F3d at 8.

When, as here, Defendants' actions are clearly directed at a specific, single individual, they are even more clearly administrative under "functional" analysis. Defendants' actions against the Plaintiff were "only directed to [her] situation and did not implicate policy". Harhay v. Town of Ellington, etc., supra, 323 F3d at 211; Visser v. Magnarelli, supra, 542 F.Supp. at 1333-1334; see also, Orange v. County of Suffolk, supra, 830 F.Supp. at 705, distinguishing that case from the single individual cases[2].

POINT V:      DEFENDANTS DO NOT HAVE QUALIFIED IMMUNITY

<u>A</u>:      *Defendants Have Not Met Their Burden for a Qualified Immunity Dismissal*

Defendants face a "formidable hurdle". McKenna v. Wright, 386 F.3d 432, 434 (2nd Cir., 2004); Field Day LLC v. County of Suffolk, 463 F.3d 167, 191-192 (2nd Cir., 2006). Their motion cannot be granted, unless it can be "determined as a matter of law". McKenna v. Wright supra, 386 F.3d at 433. The motion "is usually not successful." Field Day LLC v. County of Suffolk, supra, 463 F.3d at 192. It can successfully be asserted only "as long as the defense is based on facts appearing on the face of the complaint", McKenna v. Wright, supra, 386 F.3d at 435; Field Day LLC v. County of Suffolk, supra, 463 F.3d at 192; "assume[d] to be true". McKenna v. Wright, supra, 386 F.3d at 433:

…[ Defendants] must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, … but, as with all Rule 12(b)(6) motions, the motion may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief". McKenna v. Wright, supra, 386 F.3d at 436.

---

[2] Defendants' attempt to broaden the scope of their actions by reference to Debra Gabriel is unfounded. First of all the Complaint makes no mention of Ms. Gabriel. Brennan v. Straub, supra, 2003 WL 554620, (S.D.N.Y.), at p.4. Secondly, Ms. Gabriel resigned her position to take another. Exhibit 4. None of the conduct affected her.

Defendants  "must show" they have qualified immunity. Prue v. City of Syracuse, 26 F.3d 14, 17 (2nd Cir., 1994); Huminski v. Corsones, 396 F3d 53, 80 (2nd Cir., 2005); Shechter v. Comptroller, etc., 79 F.3d 268, 270 (2nd Cir., 1996).

_B_      _As a Matter of Law, Defendants Have Not Established Qualified Immunity_

Defendants must show (i) "that their conduct fell within the scope of their duties", Huminski v. Corsones, supra, 396 F3d at 80; Shechter v. Comptroller, etc., supra, 79 F.3d at 268-269; or (ii) if they can show that, that their "actions do not 'violate clearly established statutes or constitutional rights of which a reasonable person would have known'", or (iii) if they can show those, that  "it was 'objectively reasonable' for [the public official] (sic) to believe that his actions were lawful at the time of the challenged act." Field Day LLC v. County of Suffolk, supra, 463 F.3d at 191; Johnson v. Newburgh E.S.D., 239 F.3d 246, 250 (2nd Cir., 2001).

Defendants' conduct did not fall within the scope of their duties: their conduct violated clearly established law which a reasonable person would have known; and it was not objectively reasonable for them to believe otherwise. Certainly, on the facts alleged in the complaint, they cannot establish their qualified immunity defense as a matter of law. As a result, their motion for dismissal on that basis should be denied[3].

i:      Defendants' Conduct Did Not Fall Within the Scope of Their Duties

Defendants' actions did not fall within the scope of their duties. They had no power to fire Plaintiff, to suspend her, to abolish her position, to deny her benefits, to prevent her from performing her job, or to exclude her from the Board's offices. As a matter of law, Defendants lack the first requisite of qualified immunity: i.e., acting within the scope of his/her duties. Huminski v. Corsones, supra, 396 F3d at 80; Schechter v.

---

[3] Plaintiff does not question the general propositions set forth with citation of supporting cases in POINT III of Defendants' memorandum of law. They are adopted by Plaintiff's citation to similar cases. However, Plaintiff rejects Defendants' legal assertions which are made without the citation of authority. For example: Plaintiff rejects the unsupported argument that her property rights were not clearly established, Defendants' memorandum, p. 9-10; Plaintiff rejects the claim that she held an "at-will political position" from which she could be discharged at any time by any official, Defendants' memorandum, p. 9; and Plaintiff rejects the claim that Defendants are entitled to qualified immunity because they were "enforcing the annual budget" or that adoption of the budget gave Defendants an "obligation" to act illegally. Defendants' memorandum, p.10.

Comptroller, etc., supra, 79 F.3d at 268-269; Teddy's Drive In v. Cohen, 47 N.Y.2d 79, 82, 416 N.Y.S.2d 782, 783 (1979); Cavanaugh v. Doherty, 243 A.D.2d 92, 97, 675 N.Y.S.2d 143, 147 (3rd Dep't, 1998) Defendant's acted "entirely outside the scope of any employment duty". Shechter v. Comptroller, etc., supra, 79 F.3d at 269.

ii:     Defendants' Actions Violated Clearly Established Statutes and Rights That a Reasonable Person in Defendants' Situation Would Have Known

The tests for qualified immunity are sequential. Defendants cannot establish that they acted within the scope of their duties; thus, Court should not consider the other tests. Huminski v. Corsones, supra, 396 F3d at 80; Shechter v. Comptroller, etc., supra, 79 F.3d at 270. Even if the Court were to decide the second test, the motion should be denied. Defendants cannot show they did not "violate clearly established statutes or constitutional rights of which a reasonable person would have known". Field Day LLC v. County of Suffolk, supra, 463 F.3d at 191; Huminski v. Corsones, supra, 396 F.3d at 80. To the contrary, Defendants' actions did violate long-standing statutory and constitutional rights:

> For a legal rule to be "clearly established" at the time that an individual's right is allegedly violated, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Prue v. Coty of Syracuse, supra, 26 F.3d at 18; Johnson v. Newburgh E.S.D., supra, 239 F.3d at 250-251.

The "contours" and "boundaries" of Plaintiff's rights are clearly established, ancient, uncontradicted, and unquestioned. Plaintiff's right to be discharged and/or suspended only by the Commissioners dates back, without interruption, until 1922. The "Appoint/Terminate" rule dates back, without interruption, to the 1790's. Six years before, the Sullivan County Attorney himself rendered an opinion stating the Commissioners' exclusive powers of to hire and fire the Board's clerks. Exhibit 2.

No reasonable person in Defendant's situation would not have known of Plaintiff's rights, which are of long standing and without interruption or challenge. Defendants were not merely laymen, but high-ranking County officials who reasonably should have known of the limitations of their own powers and of the extent of Plaintiff's rights.

Even assuming that Plaintiff held an at-will job, subject to Defendants' actions, New York law since at least 1891, has held that even an at-will employee cannot be suspended without pay. Emmitt v. The Mayor, etc., 128 N.Y. 117, 120 (1891). When Defendants suspended Plaintiff without pay, they were violating a rule 112 years old.

Further assuming that Plaintiff was their at-will employee, this Circuit has held at least since 1988 that punitive action may not be taken against her for the exercise of First Amendment rights. Lieberman v, Reisman, supra, 857 F.2d at 900 (2nd Cir.,1988). Likewise, the protection of a non-tenured employee's First Amendment rights has been New York law since at least 1994. Zaretsky v. N.Y.C. Health and Hosp. Corp., 84 N.Y.2d 140, 615 N.Y.S.2d 341 (1994). Defendants were violating rights clearly at least 9 years old.

But the reality is that Plaintiff was not Defendants' at-will jobholder. Sec 3-300 and its predecessors have given the Commissioners unambiguous, exclusive powers over Plaintiff's employment since at least 1922. Defendants cite no overriding authority permitting them to usurp these powers. To the contrary, the County and Commissioner Rourke acknowledged before Judge Clemente that they lacked most of the powers involved in this action. (Judge Clemente found that they lacked the others):

> Respondents/defendants have conceded that the Legislature could not reduce the number of employees of the Board of Elections (item numbers 5 and 9 above) nor terminate employees of the Board, including Gabriel and Oppenheim [Mace] (item numbers 1, 4, 5, 6 and 10 above). Respondents also conceded that adoption of the Budget Resolution by the Legislature with its unallocated personnel budget for the Board of Elections did not constitute a termination of the two positions of senior clerk (item number 12) and that the Legislature does not have the power to determine how the Board shall apply the total sum assigned to it in budgets adopted by the Legislature (item numbers 76 and 14). Both parties agreed that the senior clerks are in the unclassified service (Civil Service Law 35[[f]) and may be terminated only at the will of the Board (item number 11). Exhibit G, pp. 3-4,

Defendants offer no explanation of how these admissions and the law and facts relating to them did not exist in January of 2003; or of how a reasonable person in Defendants' situation would not have known about them.

In addition, Plaintiffs' right to procedural due process was clearly established and would reasonably have been known to Defendants. They denied Plaintiffs procedural due

process by acting against her property right without giving her notice and an opportunity to be heard. Defendants "could not deprive [her] of this property without due process." Cleveland Bd of Ed. v. Loudermill, 470 U.S. 532, 538, 105 S. Ct 1487, 1491, 84 L. Ed .3d 494 (1985):

> An essential principle of due process is that a deprivation of life, liberty, or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case."… We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* (sic) he is deprived of any significant interest."… This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. Cleveland Bd of Ed. v. Loudermill, supra, 470 U.S. at 542, 105 S. Ct at 1493, 84 L. Ed.3d 494.

Plaintiff's right to notice and an opportunity to be heard before Defendants could act against her well established by Cleveland Bd of Ed. v. Loudermill in 1985, 17 years before Defendants acted. Prue v. City of Syracuse, 26 F.3d 14, 18 (2nd Cir., 1994). The question of "whether this type of restricted property interest would fall within the ambit of Loudermill was … clearly established, … [when] the New York Court of Appeals set the matter to rest in …October 1991", more than 11 years before Defendants proceeded against Plaintiff. Prue v. City of Syracuse, supra, 26 F.3d at 18. (Indeed, the right to a pre-determination hearing before depriving a plaintiff of an employment property right was, by 1999, "defined with 'reasonable specificity' and supported by the decisional law of the Supreme Court as well as the Court of Appeals for the Second Circuit." Scheiner v. N.Y.C. Health and Hosp. Corp., 1999 WL 771383 [S.D.N.Y.], p. 12.)

After the decision of the New York Court of Appeals in 1991, "'reasonable officials' in defendants' positions would … have known that providing [Plaintiff] with predetermination notice and an opportunity to be heard was constitutionally required", Prue v. City of Syracuse, supra, 26 F.3d at 18.

iii:   Defendants Could Not Objectively Reasonably Believe That Their Actions Were Lawful at the Time They Acted Against the Plaintiff

The various tests for qualified immunity being sequential, this Court is not called upon to consider the third criterion. Huminski v. Corsones, supra, 396 F3d at 80. Even if

the Court were to consider the third test, this motion should be denied. Defendants do not, and cannot, establish that "it was 'reasonably objective' for the [public official] (<u>sic</u>) to believe that his actions were lawful at the time of the challenged act." <u>Field Day LLC v. County of Suffolk, supra</u>, 463 F.3d at 191; <u>Huminski v. Corsones, supra</u>, 396 F3d at 93.

Whether Defendants could objectively reasonably believe that their actions were lawful is not a subjective matter:

> The existence of such qualified immunity turns on the objective legal reasonableness of those actions under the legal rules prevailing at the time the actions were taken. <u>Dobosz v. Walsh</u>, 892 F.2d 1135, 1140 (2nd Cir., 1989).

The Sullivan County Attorney in office at the time of the actions complained of herein is the same County Attorney who six years before had rendered his opinion that the Commissioners had the exclusive power to hire and fire its employees. <u>Exhibit 2</u>.

With over 150 years of uninterrupted, uncontradicted legal precedent establishing Plaintiff's rights, Defendants do not, and cannot, establish "legal rules" that they could objectively cite for a belief that they were not violating Plaintiff's rights by their conduct.

Defendants own conduct belies any claim that they had objective legal bases for their actions. Defendants were unable to determine the legal basis of their conduct and unable to decide what action they had in fact taken against Plaintiff, waffling that:

- The Legislature had "eliminated" Plaintiff's position;
- The position was no longer in the budget so Plaintiff could not hold it;
- The Plaintiff was laid off;
- They admitted to Judge Clemente that the Legislature could not reduce the number of the Board's employees;
- They admitted that the Legislature could not fire the Board's employees;
- They admitted that adoption of the budget did not terminate Plaintiff's position;
- They admitted that the Legislature did not have the power to tell the Board how to spend its budget allotment;
- They admitted that only the Commissioners may fire Plaintiff;

- Notwithstanding their admissions, Defendants refused to permit Plaintiff to perform her duties;
- Notwithstanding their admissions, they ousted Plaintiff from the Board's offices;
- Notwithstanding their admissions, they continued to exclude Plaintiff;
- Notwithstanding the admissions, they continued to treat Plaintiff as a trespasser;
- Notwithstanding their admissions, they refused to pay Plaintiff for her work;
- Without taking any action, on March 15, 2004, they "restored" Plaintiff to her position and paid her for services rendered from that date; and
- Notwithstanding their admissions and "restoration", they have continued to refuse to pay her the salary she earned from January 1, 2003 until March 14, 2004.

Defendants' admissions preceded Judge Clemente's Interim Decision of April 9, 2003, but they did not "restore" Plaintiff until March 15, 2004, suggesting they knew they were wrong all along. Cleveland Bd of Ed. v. Loudermill, supra, 470 U.S. at 544, 105 S. Ct at 1497.

CONCLUSION

Defendants have not sustained their burden of showing, beyond doubt, that there is no possible basis upon which the Plaintiff can prevail on a trial of these issues. As a result, their Rule 12 (b)(6) motion should be denied in its entirety.

RESPECTFULLY SUBMITTED.

STEPHEN L. OPPENHEIM (SO6643)
ATTORNEY FOR PLAINTIFF
55 EAST 9TH STREET – 3C
NEW YORK, NEW YORK 10003
(212) 673-5887