UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MARY JO MACE.

                PLAINTIFF,

   VS
                                    CASE NO. 05-CIV.-2786

COUNTY OF SULLIVAN; DANIEL       (SCR)
BRIGGS, INDIVIDUALLY AND AS
COUNTY MANAGER OF THE COUNTY
OF SULLIVAN; OLGA PARLOW,
INDIVIDUALLY AND AS COUNTY
TREASURER OF THE COUNTY OF
SULLIVAN; PAMELA ROURKE,
INIVIDUALLY AND AS
COMMISSIONER OF PERSONNEL
OF THE COUNTY OF SULLIVAN;
HARVEY SMITH, INDIVIDUALLY
AND AS COMMISSIONER OF GENERAL
SERVICES OF THE COUNTY OF
SULLIVAN; JOHN DOE; AND
JANE DOE

                DEFENDANTS.

--------------------------------------------------------x

        PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN
        SUPPORT OF HER OBJECTIONS TO THE REPORT AND
        RECOMMENDATION OF THE HONORABLE GEORGE A.
        YANTHIS, UNITED STATES MAGISTRATE JUDGE, DATED
        NOVEMBER 13, 2007, AND IN OPPOSITION TO DEFENDANTS'
        MOTION TO DISMISS PURSUANT TO FRCP 12 (b)(6)

                               RESPECTFULLY SUBMITTED.

                               _____
                               STEPHEN L. OPPENHEIM (SO6643)
                               ATTORNEY FOR PLAINTIFF
                               55 EAST 9TH STREET – 3C
                               NEW YORK, NEW YORK 10003
                               212 673 5887

This memorandum is submitted as a supplement to Plaintiff's Memorandum of Law submitted on the original motion, in light of the Report and Recommendation of the Magistrate Judge. The Court is respectfully referred to the arguments made in the original memorandum, which will not be repeated herein, except to discuss specific issues raised in the Report and Recommendation.

I

<u>Plaintiff Was Not an "At Will" Employee Vis-à-vis the Defendants</u>

A murderer sits condemned on death row awaiting his death at the hands of the State's executioner. The condemned man is instead murdered by a prison guard.

Is the condemned man's death any less a murder because he continued to live only at the will of the State? Is the condemned man's death any less a murder because the duly appointed officers had the right to terminate that life? Did the condemned man have any less a protected

>right to life at the hands of any officer other than the State's executioner?

It is respectfully suggested that to describe a person's employment as "at will" is shorthand for "at will at the hands of the officer with the power to terminate that employment".

Just as there is no such thing as "'negligence in the air, so to speak'", Palsgraf vs Long Island R. R., 248 N.Y. 339, 341 (1928), it is respectfully submitted that there is no such thing as an "at will" employment in the abstract, "so to speak". An "at will" employment exists only in relation to the power to terminate the employment.

In Baron vs Port Authority, etc., 271 F.3d 81 (2nd Cir., 2001), the Second Circuit referred to the employment as "at the whim of another person". Id. at 89; not at the whim of the world in general or the whim of others, but at the whim of the person having the power to exercise the whim.

The shorthand is used because "at will" employees are almost always discharged by the person having the power to do so.

This case is unique in that strangers to the power of employment and discharge have attempted to terminate Plaintiff's "at will" employment. Neither the Magistrate Judge nor the Defendants refer to a single case which involved the discharge of an "at will" employee other than by the person at whose "whim" she serves.

> The Secretary of State serves at the "pleasure of the President". She is an "at will" employee of the President of the United States. Her "at will" office does not give the Secretary of Defense the authority, on his own initiative, to pull his tanks up to Foggy Bottom and throw her out of her office. The President, on the other hand, can do so with the stroke of his pen.

Likewise, Plaintiff was the "at will" employee only of the Commissioners of Elections. Not one of the Defendants had the power to terminate or otherwise affect Plaintiff's employment.

The issue in this case is not the manner of Plaintiff's discharge or suspension, but the power of the Defendants to act against her at all.

4

Defendants County and O'Rourke have judicially admitted that they "did not have the legal authority to terminate Oppenheim." Exhibit G, Hill v. the County of Sullivan, Sup. Ct, Sull. Co., 2003) Interim Decision and Order, April 9, 2003, p. 4. They also judicially admitted that Plaintiff, as a senior clerk of the Board of Elections "may be hired and terminated only at the will of the Board". Exhibit G, Hill v. the County of Sullivan, Sup. Ct, Sull. Co., 2003) Interim Decision and Order, April 9, 2003, p. 7.

The Board never acted against Plaintiff, in any way whatsoever.

Oppenheim was allowed to return to work without any formal action of the Defendants or of the Defendants on March 15, 2004, over 13 months after being excluded by Defendants.

Defendants had no power to terminate or otherwise act against Plaintiff's employment. Having no power to act, they certainly had no discretion to exercise in carrying out any action against Plaintiff's employment.

5

Plaintiff was in no sense an employee, "at will" or otherwise, of the Defendants. She was an employee of the Board of Elections, not of the county. The Board of Elections functions are "in effect state [not County] facilities". <u>Exhibit G, Hill v. the County of Sullivan</u>, Sup. Ct, Sull. Co., 2003) Interim Decision and Order, April 9, 2003, p. 7.

Boards of Elections are created by Election Law Sec. 3-200, not by any portion of the County Law. Significantly, the Commissioners of Elections are not listed as County officers, elective or appointive, in Section 400 or anywhere else of the County Law.

Plaintiff was in no sense an employee of any of the Defendants.

Defendants did not even have the power to fix Plaintiff's salary. They have judicially admitted that they merely had the power to provide the Beard of Elections with "its unallocated personnel budget." <u>Exhibit G, Hill v. the County of Sullivan</u>, Sup. Ct, Sull. Co., 2003) Interim Decision and Order, April 9, 2003, p. 3.

By the adoption of New York State Const. Art. 2, Sec. 8 and Election Law Title II, New York created a property interest in Plaintiff vis-à-vis Defendants. The State gave Plaintiff a property interest in the expectation that she would continue in her job until lawfully discharged by the Commissioners of Elections.

Plaintiff was not an employee of the Defendants at all.  She was the employee of the Board of Elections. Defendants have judicially conceded that their only involvement with Plaintiff's employment was to provide the funds for the operation of the Board and to issue her salary checks on behalf of the Board. Exhibit G, Hill v. the County of Sullivan, Sup. Ct, Sull. Co., 2003) Interim Decision and Order, April 9, 2003, p. 3-4, 7. New York created this hybrid situation in light of the special position of the Board of Elections as codified in N.Y.S.Const., Art. 2, Sec. 8b and Election Law, Title II.

In addition, because Defendants had no power to discharge Plaintiff, this is not a case where an agency has merely failed to follow its own rules. This is a case where there were no rules to follow because Defendants had no power to act. For that reason, Torres-Rosado vs Rotger-Sabat, 335 F.3d 1 (1st Cir.,

7

2003) has no application in the present case. Unlike the <u>Torres-Rosado</u> plaintiff, this Plaintiff does not merely complain of Defendants' " failure to follow [their] own rules". <u>Torres-Rosado vs Rotger-Sabat, supra</u>, 335 F.3d at 10. This Plaintiff complains that there is no power to act, which precludes even the existence of rules upon which Defendants might have acted.

Finally, it is respectfully suggested that the Magistrate Judge is incorrect that an "at will" employee is without continuing employment expectations.

As shown in Point II B of Plaintiff's Memorandum on the original motion, Plaintiff had many expectations of continuing employment. Defendants do not contest these continuing rights, including the right to be discharged only by the Commissioners of Elections. In addition to those rights, Plaintiff had the right not to be discharged or otherwise interfered with for exercising her First Amendment rights, including free speech and political activity. <u>White Plains Towing Corp. vs Patterson</u>, 991 F.2d 1094 (2nd Cir., 1993), <u>cert. denied</u>, 510 U.S. 865, 114 S. Ct, 185, 126 L.Ed.2d 144 (1993):

> The public employer's right to discharge an employee for
> 
> exercising his First Amendment right to freedom of speech, even if the

8

employee could have been discharged without cause, is nonetheless circumscribed. Id., at 1057. See also, Luck vs Mazzone, 53 F.3rd 475, 476 (2nd Cir., 1995).

Another part of the bundle of continuing rights of a so-called "at will" employee, created by New York law, is the right not to be discharged for refusing to act unethically. Luck vs Mazzone, supra, 53 F.3rd at 477.

Likewise, under the New York Civil Rights Law Plaintiff, whether "at will" or not, could not be discharged for reasons of race, creed, color, gender, national origin, etc. [James can you bring up the text of the Civil Rights Law so that I can refer to a section number and also get rid of the "etc". I do not want to wait until Monday for the library to open. If you can't, I send it the way it is.]

In other words "at will" is shorthand for employment which includes, under New York law the right, among others, to be discharged only by the officer having the power of termination vis-à-vis the particular employee. Gould v. Board of Education, etc., 81 N.Y.2d 446, 451, 599 N.Y.S.2d 787, 789 (1993); Lezette v. Board of Education, etc., 35 N.Y.2d 272, 278-279, 360 N.Y.S.2d 869, 874 (1974); Golomb v. Board of Education, etc., 92 A.D.2d 256, 257-258, 460 N.Y.S.2d 805, 806-807 (2nd Dep't, 1983); Lindsey v. Board of Education, etc., 72 A.D.2d 185, 189, 424 N.Y.S.2d 575, 578 (4th Dep't, 1980); Farrell v. Board of Education, etc., 64 A.D.2d 703, 407 N.Y.S.2d 540, 541 (2nd Dep't,

1978); 1977 N.Y. Op. Atty Gen. No. 224 [Informal)], 1977 WL 25483 (N.Y.A.G.), p.1; 1974 N.Y. Op. Atty Gen. No. 204 [Informal)], 1974 WL 324345 (N.Y.A.G.), p.2.

The Magistrate Judge correctly reports that it "is now undisputed that plaintiff serves at the will of the Commissioners of Elections; and that the unanimous vote of the Commissioners is necessary to terminate Board employees including the Senior Clerk position", which Plaintiff held. Report and Recommendation, p. 2. The Magistrate Judge also correctly reports that the sources of Plaintiff's rights include state law. Since New York State law protects Plaintiff from discharge by any one but the Commissioners of Elections, she has a protected property right against Defendants' ultra vires interference with her employment, even though she be classified as "at will".

II

Plaintiff's Substantive Due Process Claim Should Not Be
Dismissed at This Stage of the Proceedings

It is respectfully suggested that it is premature to dismiss the Plaintiff's substantive due process claim at this point of the proceedings for two reasons.

Since the proceeding is at the very beginning, Plaintiff has not had an opportunity to develop the facts that would show the outrageousness of Defendants' conduct. To the

extent that such facts must be, and have not been, pleaded to avoid a Rule 12 (b)(6) dismissal, Plaintiff should be granted leave to amend as requested in section IV, infra.

Secondly. The Magistrate Judge has recommended dismissal based on the existence of specific First and Fourteenth Amendment claims. However, the Magistrate Judge has also recommended dismissal of those claims. Should the Court accept those parts of the Report and Recommendation, Plaintiff will no longer have any specific claim upon which to base a dismissal under Velez vs Levy, 401 F.3d 75 (2nd Cir., 2005).

III

Because Defendants Had No Power Over Plaintiff's Employment, They Had No Discretion to Act; as a Result, the Mandatory Rule of Silano Does Not Bar Plaintiff's Liberty Interest

As demonstrated in point I above, Defendants had no power over Plaintiff's employment or termination. Since they had no power, they had no discretion to exercise in regard to her employment. They were simply and totally out of the loop.

Because Defendants had no discretion to exercise, Rodriguez vs McLoughlin, 214 F.3d 328 (2nd Cir., 2000), cert. denied, 532 U.S, 1051, 121 S.Ct. 2192, 149 L.Ed.2d 1023 (2001) and Silano vs Sag Harbor, etc., 42 F3d 719 (2nd Cir., 1994), cert. denied, 515 U.S. 1160, 115 S.Ct. 2612, 132

L.Ed.2d 856 (1995), have no relevance to the present case. The rule of Silano and Rodriguez calls for mandatory, statutory restrictions on the exercise of discretion by public officers. The Rodriguez court based the rule on a holding of the Supreme Court that a "'State creates a protected liberty interest by placing substantive limitations on the official discretion'" Rodriguez vs McLoughlin, supra, 214 F.3d at 338, quoting Kentucky Dep't of Corrections vs Thompson, 490 U.S. 454, 462,109 S.Ct. 1904. 104 L.Ed.2d 506 (1989), itself quoting Olim vs Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (emphasis supplied) Since the Defendants had no discretion to exercise, there is no call for the application of a rule which limits a nonexistent discretion.

Expressed differently, in Silano/Rodriguez terms, New York State mandated the outcome of any inquiry by absolutely denying Defendants any discretion regarding Plaintiff's employment.

For that reason, Plaintiff properly alleges a liberty interest claim.

VI

<u>Defendants Smith and Briggs Are Not Entitled to Qualified Immunity</u>

<u>Smith</u>: At page 11 of his Report and Recommendation, the Magistrate Judge recommends that Defendant Smith be afforded qualified immunity. The recommendation is based solely on the apparent absence of any allegation of personal motivation on Smith's part or that he knew of any improper action or motivation of the County Legislature. The Magistrate Judge gives no authority for the existence of these criteria for determining qualified immunity.

It is respectfully suggested that the Magistrate Judge incorrectly focused on Smith's conduct <u>vis-à-vis</u> the County Legislature, rather that on the effect of his conduct in light of its legality under established principals of law and the other criteria set for in Part V of Plaintiff's memorandum on the original motion. It is respectfully suggested that Defendant Smith has failed to establish his entitlement to qualified immunity as set for in Plaintiff's original memorandum, to which the Court is respectfully referred.

<u>Briggs</u>: At pages 11-12 of his Report and Recommendation the Magistrate Judge recommends that Defendant Briggs be granted qualified immunity. However, the Report and Recommendation states no reasons for such grant of immunity. Unlike the treatment of Defendant Smith in the preceding paragraph, the discussion of Briggs is merely a statement of the recommendation without any analysis.

It is respectfully submitted that the situation of Defendant Briggs is sufficiently alleged to avoid an immunity dismissal. As the Magistrate Judge finds elsewhere, at page 15,

Defendant Briggs is alleged to be the "final policy and decision maker" of the County. It is respectfully submitted that as to the "final policy and decision maker" of the County, it cannot be said that it "appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim that would entitle [her] to relief." It is respectfully submitted that Defendant Briggs has not sustained his burden to establish his entitlement the qualified immunity. The Court is again respectfully referred to Point V of Plaintiff's original memorandum.

V

Plaintiff Should Be Given Leave to Amend

In several sections, the Report and Recommendation is based on the Magistrate Judge's finding that some allegations of the complaint are factually inadequate.

Plaintiff respectfully prays leave to re-plead the complaint.

Plaintiff has not previously amended the complaint. As demonstrated in the accompanying affidavit of Stephen l. Oppenheim, Plaintiff is in position to amend the complaint to fill in the lacunae addressed by the Magistrate Judge. Amendment is appropriate at this stage of the case because this is Plaintiff's first request to do so and because leave should be freely granted to a party who has not abused the process by repeated amendments and whose request is not "futile".  De Jesus vs Sears, Roebuck & Co., 87 F. 3rd 65, 71-72 (2nd Cir., 1996), cert. denied, 519 U.S. 1007, 117 S.Ct, 509, 136

.

L.Ed.2d 399 (1990); In re Merrill Lynch & Co., etc., 273 F. Supp.2d 351, 390-394 (S.D.N.Y., 2003); Peele vs N.Y.C. Dep't of Social Services, etc., 1995 WL 728478 (S.D.N.Y.), p.5, aff'd, 112 F3d 505 (2nd Cir., 1996).

### Conclusion

It is respectfully prayed that the Report and Recommendation should be rejected to the extent set forth in Plaintiff's Objections and that Plaintiff should be given leave to amend.

RESPECTFULLY SUBMITTED.

_____
STEPHEN L. OPPENHEIM (SO6643)
ATTORNEY FOR PLAINTIF
55 EAST 9TH STREET – 3C
NEW YORK, NEW YORK 10003
212 673 5887